UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
RENEE M. BRIGGS,

                Plaintiff,

    -against-

SCO FAMILY OF SERVICES, MEGAN RYAN,
BONNIE ISSAC, ALLISON PACHECO, JESSICA
FISHSTEIN, and LORI HANNIBAL,

                Defendants.
------------------------------------------------------------------------X

**REPORT AND
RECOMMENDATION**
16-CV-3882 (JFB)(SIL)

**STEVEN I. LOCKE, United States Magistrate Judge:**

      By way of Complaint dated July 6, 2016, *pro se* Plaintiff Renee M. Briggs
("Plaintiff" or "Briggs") commenced this employment discrimination and retaliation
action against Defendants Megan Ryan ("Ryan"), Bonnie Issac ("Issac"), Allison
Pacheco ("Pacheco"), Jessica Fishstein ("Fishstein"), Lori Hannibal ("Hannibal")
(collectively, the "Individual Defendants") and SCO Family of Services ("SCO") (SCO
together with the Individual Defendants, "Defendants").[1] *See* Complaint ("Compl."),
Docket Entry ("DE") [1]. Adopting a Report and Recommendation issued by this
Court on February 15, 2018, Judge Bianco entered an Order dated March 16, 2018,
dismissing Plaintiff's Complaint without prejudice and with leave to amend. *See* DEs
[33], [39]. Briggs then filed an Amended Complaint on April 16, 2018. *See* Amended
Complaint ("Am. Compl."), DE [41]. Presently before the Court, on referral from the
Honorable Joseph F. Bianco for Report and Recommendation, is Defendants' motion

---

[1] According to Defendants, Ryan and Pacheco now go by the names of Megan Seymore and
Allison Houlroyd, respectively. *See* Reply Memorandum of Law in Further Support of Defendants'
Motion to Dismiss Plaintiff's Amended Complaint in its Entirety ("Def.'s Reply. Mem."), DE [50], at 1.

to dismiss the Amended Complaint for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."). *See* DE [44]. For the reasons set forth herein, the Court respectfully recommends that Defendants' motion be granted and that the Amended Complaint be dismissed. Nevertheless, the Court recommends that Plaintiff be given one final opportunity to file an amended pleading that remedies the deficiencies detailed below.

## I.   BACKGROUND

### A. Materials Considered by the Court

Because Plaintiff's one-page Amended Complaint lacks any comprehensible factual allegations—and in light of the liberal pleading standard applicable to *pro se* civil rights complaints in this Circuit, *see Thompson v. Carter*, 284 F.3d 411, 419 (2d Cir. 2002)—the Court draws the following facts from Plaintiff's "Memorandum of Law in Support of Plaintiff's Motion to Opposition [*sic*] Defendant's Motion to Dismiss" ("Plaintiff's Opposition" or "Pl.'s Opp."), DE [48], in addition to the Amended Complaint.[2] *See Washington v. Westchester Cty. Dep't of Correction*, No. 13-cv-5322, 2015 WL 408941, at *1 n.1 (S.D.N.Y. Jan. 30, 2015) ("While the Court ordinarily may not consider factual allegations contained in opposition papers to a motion to dismiss, given Plaintiff's *pro se* status, the Court will consider new factual allegations

---

[2] Like those allegations in both the Complaint and the Amended Complaint, the facts set forth in Plaintiff's Opposition are exceedingly difficult to decipher. The Court further notes that, in addition to Plaintiff's Opposition, Briggs has submitted a document entitled "Plaintiff's Memorandum of Law in Opposition to Defendants' Amended Motion to Dismiss," which contains only: (i) a "notice" that she will "move this Court . . . against Order [*sic*] pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure"; (ii) the legal standard under Fed. R. Civ. P. 12(b)(6); and (iii) a recitation of select portions of Fed. R. Civ. P. 56. DE [47]. Although this document contains no factual allegations, the Court has considered it as well in connection with the instant motion.

contained in Plaintiff's opposition."). Moreover, the Court considers the factual allegations set forth in the original Complaint and its attachments to the extent that they are not repeated in the Amended Complaint or Plaintiff's Opposition. *See id.* ("[G]iven Plaintiff's *pro se* status, . . . the Court will consider facts from the Plaintiff's Complaint . . . that have not been repeated in the Amended Complaint." (citations omitted)); *see also Fleming v. City of New York*, No. 10-cv-3345, 2014 WL 6769618, at *3 (S.D.N.Y. Nov. 26, 2014) ("Since *pro se* civil rights complaints should be read with . . . generosity, [Plaintiff's original] complaint must be given the benefit of incorporation." (alterations in original) (quoting *Camarano v. City of New York*, 624 F. Supp. 1144, 1147-48 (S.D.N.Y.1986))). The Court also considers the Notice of Charge of Discrimination (the "Notice of Charge") submitted by Plaintiff to the United States Equal Employment Opportunity Commission ("EEOC") on February 18, 2016. *See* DE [49-1]. Although Defendants, and not Briggs, filed this document with the Court, Plaintiff's Opposition repeatedly references her submissions to the EEOC. *See, e.g.*, Pl.'s Opp. at 1-2. Since the Court is construing Briggs's Opposition as an extension of her Amended Complaint, materials referenced therein are properly considered at this juncture. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (noting that, for purposes of Fed. R. Civ. P. 12(b), "the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference" (citation omitted)).

**B. <u>Facts</u>**[3]

Briggs was employed by SCO as a Waiver Service Provider from approximately 2011 through her termination in or around December 2015.[4]  *See* Compl. at 26, 28.[5] Pacheco became Plaintiff's manager in March 2014 and, "throughout [Briggs's] time working with [Pacheco,] all [of Plaintiff's] work was processed timely[,] 3 to 5 days turn around."  Pl.'s Opp. at 12.   Pacheco emailed Briggs on August 27, 2015, "only looking for service location on paper work."  *See id.* at 13.  On September 11, 2015, Pacheco "started harassing Plaintiff" by email "regarding paper work and billing for one and not the other family member."  *Id.*  In that email, Pacheco informed Plaintiff that she did not include certain necessary information with her billing paperwork. *See* Compl. at 24.

On August 31, 2015, Fishstein advised Briggs that she "need[ed] to process [her] DSP report from the HCI."[6]  Pl.'s Opp. at 13.  Plaintiff thereafter informed Fishstein that "information was left in [her] mail box [in] September 2015 . . . ."  *Id.*

---

[3] In an effort to provide a coherent, chronological recitation of the facts underlying Plaintiff's claims, the Court has, in this Report and Recommendation, grouped together allegations from the Complaint and Plaintiff's Opposition that seemingly relate to the same or similar events, even where no date has been associated with them.  Also to facilitate readability, and solely for that purpose, this Court has, when possible, made significant alterations to text quoted from Briggs's submissions.  All such modifications are merely cosmetic in nature and do not affect the content of Plaintiff's assertions.

[4] Plaintiff does not describe her duties as a Waiver Service Provider at SCO.

[5] This Court will, as it did in the Report and Recommendation dated February 15, 2018, cite to the page numbers of the original Complaint and the attachments thereto supplied by the CM/ECF system on document DE [1].

[6] Unless otherwise noted, the acronyms used by Plaintiff, and recited herein, are not defined in any of her submissions.

4

According to Briggs, "[t]he remediation of . . . Fishstein['s] client was addressed stating things were not done." *Id.*[7]

On or around September 21, 2015, Plaintiff "requested to" either "set down" or "step down." Compl. at 10. According to Briggs, Ryan, a Health Care Integrator at SCO, would "speak to [Plaintiff] like a child," "sit down and look at information," and then "tell [Briggs] how to do her job."[8] *Id.* Ryan also "subjected Plaintiff to derogatory comments as to you people and how to handle a client, places to take clients, and what to do at each visit." Pl.'s Opp. at 12. In response, Briggs informed Ryan that she had "been a Waiver Service Provider . . . for [three] years with several years of experience" and explained that Ryan's "comments [were] not professional." *Id.* Plaintiff further alleges that Ryan both called to ask parents what time Briggs arrived for appointments and sent emails "with what [Plaintiff] was doing[.]" *Id.* It is unclear when most of these events occurred. Briggs does claim, however, that Ryan "called [a] client on September 4, 2015, [at] 8:04 [p.m.] to see when was the last time [Plaintiff] made a visit." *Id.* Ryan also "informed the client [that] she will take care of this problem." *Id.*

By email on September 2, 2015 at 12:45 p.m., Briggs "received [p]ayroll pertaining to June and August 2015 . . . [,]" which indicated "no [p]roblems." *Id.* at 13.

---

[7] Fishstein also "informed Plaintiff you need to process the paper work for another client not dealing with the same case to work, per . . . Isaac." Pl.'s Opp. at 9.

[8] It appears that Ryan, as Health Care Integrator, supervised Briggs in some capacity.

Plaintiff was at the office on either September 23, 2015 or September 24, 2015, but "[Fishstein] and [Pacheco] wasn't there." Compl. at 11. While she was at the office, Briggs "put [something in Pacheco's] mailbox and left [something for Fishstein] on her desk."[9] *Id.* at 11-12. On September 28, 2015, Pacheco emailed Plaintiff again to advise her of additional deficiencies in her paperwork. *See id.* at 25.

On or around September 29, 2015, Briggs visited the office to "set an appt on Sat." *Id.* at 10. When Plaintiff arrived, "Ms. Gloria" was on the phone with Ryan. *Id.* During that discussion, Ryan told Ms. Gloria that Briggs was suspended as of October 3, 2015. *Id.* Thereafter, Pacheco called Plaintiff back and explained that "she was suspended for billing."[10] *Id.* Pacheco "couldn't tell [Briggs] why she was suspended except for billing." *Id.* at 12. Fishstein said Plaintiff was suspended "due to Kevin H." *Id.* Hannibal informed Briggs that "she was suspended due to infraction of policy when there was suspension of taking [two] kids on." *Id.* (errors in original). *Id.* Hannibal also told Plaintiff that "once we get an allegation, we need to explore it." *Id.* at 11. More specifically, Hannibal explained that SCO "need[ed] to investigate the allegation of the child making a statement true or false being in the car with another client." Pl.'s Opp. at 9. Briggs "inquired with the Regional Director as to what time and what day was the allege[d] charge." *Id.* Plaintiff asked for "everything in writing [and] even asked [Issac] [and] no one told her why." Compl. at 12. Briggs

_____

[9] It is unclear what item Plaintiff left for Fishstein and Pacheco on either September 23, 2015 or September 24, 2015.

[10] Notwithstanding this allegation, Plaintiff also claims that "[Pacheco] never told her (call email or txt) her to tell her she suspended." Compl. at 12 (errors in original).

"was told [that she did] no[t] need to [be] give[n] any time to the allegation."  Pl.'s Opp. at 9.  Plaintiff then "stated to . . . Hannibal where due process of the charges is." *Id.*

According to Briggs, "Ms. Haerr contacted her to inform her about [Hannibal,] [and] Christine came to her house."[11]  Compl. at 10.  Ms. Haerr contacted Plaintiff for a second time "after Christine came to her house again."  *Id.*  Plaintiff "never received remediation before from manager or QI."  *Id.*  "When [Briggs] obtained remediation from QI, she felt the agency was digging for information on her."  *Id.* at 11.

Pacheco again emailed Briggs on October 5, 2015 to express concerns about Briggs's billing practices and missing paperwork submissions.  *See id.* at 30.  In particular, Pacheco notified Plaintiff that "[t]he [m]onth of July 2015 (4) services are missing, August 2015 (4) services and September 2015 (4) services missing [*sic*]," and that she "need[s] to follow rules of compliance with Medicaid and SCO of family services [*sic*] will not get paid if information is not submitted on time."  Pl.'s Opp. at 13.[12]  It appears that, on the same date, Pacheco informed Plaintiff, either by a separate email or by telephone, that she was "suspended until further notice."  *See id.*  Plaintiff responded to Pacheco's email regarding billing and paperwork and provided details about certain services she rendered from July through August 2015. *See* Compl. at 31.  In addition, Briggs stated to Pacheco that "there is no way two

---

[11] Plaintiff does not provide further information regarding "Christine" or "Ms. Haerr."

[12] On an unspecified date in October 2015, Ryan also "informed Plaintiff [that] her paperwork was missing from July[ ] and August . . . , whereas all paper work has a [five] day turn around."  Pl.'s Opp. at 8.

7

months go by without the manager contacting the Waiver Service Provider because Medicaid has a [five] day turn around." Pl.'s Opp. at 9. Also on October 5, 2015, Briggs "complained to [Isaac] about [Ryan]." Compl. at 11. Isaac emailed Plaintiff on October 8, 2015 as a follow-up to Pacheco's October 5, 2015 email and further described the deficiencies in the billing records submitted by Briggs. *See id.* at 33. In response to that email, Plaintiff wrote, "I greatly appreciate your assistance however i stil need in rwritting the suspension dated from September because this information just came about in October and I need to speak to humans resources about the ntimadation and retalitation against me . . . ." *Id.* (errors in original).

> Plaintiff also alleges the following:
>
> As to the claim of paper work Candice Sessom, M. Ed QI Specialist, the information was very well organized and contained abundant amount of data from previous HCI Tamika Foster (Manager, HCI). [Ryan] and [Pacheco] client was different from . . . Fishstein and all proceeded to exercise complaint and false charges relating to paper work. Bonnie Isaac Director of SCO . . . informed the defendants in question and . . . Hannibal we will get back to the plaintiff upon investigation. Bonnie Isaac LCSW Director E-mail Plaintiff about paper work from [Pacheco], [Fishstein] and [Ryan] October 15, 2015 of work not billed.

Pl.'s Opp. at 14 (errors in original).

By letter dated December 9, 2015, SCO's Associate Human Resources Director, Mariel King, informed Briggs that her employment was terminated effective November 18, 2015. *See* Compl. at 28. Plaintiff "spoke to Human Resources [p]rior to being terminate [*sic*] in November 2015 for reason not stated without merit." Pl.'s Opp. at 14. Yet, "SCO proceeded to harassed and discriminated [*sic*] other clients,

visiting unannounced looking for information about Plaintiff." *Id.* Further, "SCO . . . stopped services for client not going along with the interrogation." *Id.*

### C. EEOC Charges

According to the Complaint, Briggs filed a charge with the EEOC regarding Defendants' alleged discriminatory conduct on or in "10/15." *See* Compl. at 6. The Amended Complaint also identifies a "May/2015 charge of discriminate and Human rights law, under the title VIII [*sic*]." Am. Compl. However, the Notice of Charge provided to this Court by Defendants, EEOC Charge No. 520-2016-01354, indicates that Plaintiff filed a charge against SCO on February 18, 2016. *See* DE [49-1]. The Notice of Charge states that Briggs's charge was filed under Title VII of the Civil Rights Act and describes the "circumstances of alleged discrimination" as "retaliation" only. *Id.* Further, in a category entitled "issues," the Notice of Charge lists "suspension" and "terms/conditions." *Id.*

On May 11, 2016, the EEOC issued a Dismissal and Notice of Rights (the "Notice of Right to Sue") in relation to Charge No. 520-2016-01354. *See* Compl. at 6, 8. The Notice of Right to Sue explained that, "[b]ased upon its investigation, the EEOC [was] unable to conclude that the information obtained established violations of the statutes." *Id.* The Notice of Right to Sue also provided that the EEOC did not "certify that the respondent [was] in compliance with the statutes," nor did it make a finding "as to any other issues that might be construed as having been raised by" Plaintiff's charge." *Id.*[13]

---

[13] Notably, Plaintiff has provided no further information regarding the charges allegedly filed with the EEOC on or in "10/15," Compl. at 6, and in "May/2015," Am. Compl.

### D. <u>Procedural History</u>

Plaintiff commenced this action against Defendants by way of Complaint dated July 7, 2016, which appeared to assert only claims for employment discrimination under the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. L. § 296. *See* Compl. at 3-4. Defendants filed their Answer to the Complaint on April 5, 2017. *See* DE [12]. On July 14, 2017, Defendants moved both to dismiss the Complaint for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) and for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). *See* DEs [26]-[28]. Following Judge Bianco's referral of that motion to this Court, *see* DE [32], this Court issued a Report and Recommendation dated February 12, 2018, recommending dismissal, without prejudice, of the Complaint under Fed. R. Civ. P. 12(c) for failure to state a claim, *see* DE [33]. Though this Court construed the Complaint as having asserted a claim under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and thus recommended that Defendants' argument under Fed. R. Civ. P. 12(b)(1) be rejected, the Court nevertheless concluded that Briggs failed to plead facts supporting a claim for either discrimination or retaliation under Title VII. *See* DE [33] at 8-15. Additionally, this Court recommended that Judge Bianco decline to exercise supplemental jurisdiction over Plaintiff's state law claims. *See id.* at 15-16. On March 16, 2018, Judge Bianco adopted the February 12, 2018 Report and Recommendation in its entirety, thereby dismissing Briggs's Complaint without prejudice and with leave to amend. *See* DE [39].

Briggs filed a one-page Amended Complaint on April 16, 2018. *See* DE [41]. In her amended pleading, Plaintiff alleges that "[t]he propose amended complain involve addition information for retaliation and prejudice in violation of wrongful separation set forth in May/2015 charge of discriminate and Human rights law, under the title VIII[,]" *id.* (errors in original), but Briggs sets forth no facts in support of her claims. Consequently, in accordance with a briefing schedule set by Judge Bianco, Defendants again moved to dismiss Plaintiff's claims on May 24, 2018. *See* DEs [43], [44]. Briggs opposed Defendants' motion on June 27, 2018. *See* DEs [47], [48].

As explained above, Plaintiff's Opposition includes many new factual allegations pertaining to "retaliation and discrimination of employment of fair practice before termination was considered." Pl.'s Opp. at 1. Briggs contends that she "is a member of the protected class, [who] communicat[ed] with a supervisor or manager about employment discrimination, including harassment." *Id.* at 2. Plaintiff's Opposition, moreover, explains that Plaintiff is "assert[ing] claims for employment discrimination, invoking several federal statutes: Title VII . . . for employment discrimination based on race, color, religion, gender and national origin; Age Discrimination in Employment Act of 1967 [("ADEA")] . . . [;] and American with Disabilities Act of 1990 [("ADA")] . . . [,]" but then proceeds to assert only that "Plaintiff has suffered discrimination based on national origin." Pl.'s Opp. at 7. Elsewhere, Plaintiff's Opposition provides that the Amended Complaint "sets forth *six* counts: (1) Violation of Title VII based on color, (2) Title VII hostile work environment (3) based on national origin (4) Title VII retaliation." *Id.* at 8 (emphasis

11

added).  According to Briggs, Defendants' "offending conduct" consists of "termination of employment, failure to accommodate Plaintiff, terms and conditions of her employment, retaliation, discrimination and harassment." *Id.*  Briggs "believe[s] that [she] ha[s] been discharged in retaliation for filing a charge of racial discrimination against [her] employer." *Id.*

Plaintiff also claims that she has "alleged facts implicating the individual defendants," more specifically:  (i) that Hannibal and Isaac were "notified of the EEOC report from the Human Resource Specialist Laura Tropiano on October 19, 2015, [and] Denise Small Savitch [on] October 2015 . . . ."; (ii) that Ryan "notified . . . Briggs upon arrival to client home on October 3, 2015 of suspension, without issuance of reprimand or progressive employee discipline; and (iii) "Fishstein . . . October 5, 2015, missing paper work for client Kevin Harr, not the client in question."[14]  *Id.* at 2-3.  As a result, Briggs suggests that the Individual Defendants are liable "under the aiding and abetting provision of Section 296(6)." *Id.* at 11.

## II.   LEGAL STANDARDS

### A. Fed. R. Civ. P. 12(b)(6)

To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1940 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1960 (2007)).  A claim is considered plausible on its face "when the plaintiff pleads

---

[14] Plaintiff does not provide further information regarding "Laura Tropiano" or "Denise Small Savitch."

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949. But, a pleading "that offers only 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1965). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557, 127 S. Ct. at 1966).

In deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a court must 'accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor.'" *U.S. ex rel. Siegel v. Roche Diagnostics Corp.*, 988 F. Supp. 2d 341, 343 (E.D.N.Y. 2013) (quoting *LaFaro v. N.Y. Cardiothoracic Grp.*, 570 F.3d 471, 475 (2d Cir. 2009)). Nevertheless, "threadbare recitals of the elements of a cause of action" that are supported by "conclusory" statements and mere speculation are inadequate and subject to dismissal. *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (internal quotation and citation omitted); *see Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."). "The court's consideration on a motion under Fed. R. Civ. P. 12(b)(6) is limited to the factual allegations in the complaint; documents incorporated by reference into the complaint; matters of which judicial notice may be taken; and documents either in plaintiff's possession or of which plaintiff had knowledge and relied on in bringing suit." *Messina v. Mazzeo*,

854 F. Supp. 116, 128 (E.D.N.Y. 1994) (citing *Brass v. American Film Technologies, Inc.*, 987 F.2d 142, 150 (2d Cir. 1993)).

### B. *Pro Se* **Pleadings**

It is well-established that pleadings by *pro se* plaintiffs are held "to less stringent standards than formal pleadings drafted by lawyers." *Hughes v. Rowe*, 449 U.S. 5, 9, 101 S. Ct. 173, 176 (1980); *see also Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197, 2200 (2007) ("A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." (internal citations omitted)).  The Second Circuit has held that a court reviewing a *pro se* complaint must "construe the complaint broadly, and interpret it to raise the strongest arguments that it suggests." *Weixel v. Bd. of Educ. of the City of New York*, 287 F.3d 138, 146 (2d Cir. 2002) (internal alterations omitted); *see also Rene v. Citibank N.A.*, 32 F. Supp. 2d 539, 541 (E.D.N.Y. 1999) (holding that a court must "make reasonable allowances so that . . . *pro se* plaintiffs do not forfeit their rights by virtue of their lack of legal training").  However, the court "need not argue a *pro se* litigant's case nor create a case for the *pro se* which does not exist." *Ogunmokun v. Am. Educ. Servs./PHEAA*, No. 12-cv-4403, 2014 WL 4724707, at *3 (E.D.N.Y. Sept. 23, 2014) (quoting *Molina v. New York*, 956 F. Supp. 257, 259 (E.D.N.Y. 1995)).

## III.   DISCUSSION

Defendants urge the Court to dismiss the Amended Complaint with prejudice on the grounds that it:  (i) fails to state a claim for either discrimination or retaliation;

and (ii) fails to establish the Individual Defendants' liability.   *See* Memorandum of Law in Support of Defendants' Motion to Dismiss Plaintiff's Amended Complaint in Its Entirety, DE [46], at 1-2.   Moreover, Defendants contend that the discrimination claim must be dismissed on the alternative basis that Plaintiff failed to exhaust her administrative remedies with respect to that claim.   *See* Def.'s Reply Mem. at 3. Applying the standards outlined above, and for the reasons set forth below, the Court recommends that the Amended Complaint be dismissed, but that Briggs be afforded one final opportunity to amend her pleading.

### A. <u>Title VII Discrimination Claims</u>

Title VII "aims to remedy discrimination in the workplace on the basis of race, color, religion, sex or national origin . . . ."   *Harrison v. Potter*, 323 F. Supp. 2d 593, 599 (S.D.N.Y. 2004).   The statute provides, in relevant part:

> It shall be an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e-2(a).   A claim under Title VII is analyzed under the burden-shifting framework of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S. Ct. 1817 (1973). *See Mohamed v. NYU*, No. 14-cv-8373, 2015 WL 3387218, at *23 (S.D.N.Y. May 21, 2015), *report and recommendation adopted,* 2015 WL 5307391 (S.D.N.Y. Sept. 10, 2015), *reconsideration denied sub nom.*, 2015 WL 7076124 (S.D.N.Y. Nov. 12, 2015). Under this framework, a plaintiff has the initial burden to establish a *prima facie* case of discrimination.   *See id.*; *McDonnell Douglas,* 411 U.S. at 802, 93 S. Ct. at 1824.

A plaintiff can establish a *prima facie* case by alleging that: "(1) [she] is a member of a protected class; (2) [she] was qualified for the position [s]he held; (3) [she] suffered an adverse employment action; and (4) the adverse action took place under circumstances giving rise to [an] inference of discrimination." *See Mohamed*, 2015 WL 3387218, at *23. If all elements are met, the burden shifts to the employer to "proffer a legitimate non-discriminatory reason for its actions . . . ." *Abrams v. Dep't of Pub. Safety*, 764 F.3d 244, 251 (2d Cir. 2014). Then, the plaintiff must "establish that the defendant's reason is in fact pretext for unlawful discrimination." *Id.* "Although an employment discrimination plaintiff need not plead a *prima facie* case of discrimination, . . . dismissal is nevertheless appropriate where the plaintiff fail[s] to allege even the basic elements of a discriminatory action claim." *Idlisan v. N. Shore-Long Island Jewish Health Sys., Inc.*, No. 13-cv-2345, 2014 WL 2157540, at *7 (E.D.N.Y. May 23, 2014) (internal citations and quotation marks omitted).

Here, even considering the allegations set forth in the Complaint, the Amended Complaint and Plaintiff's Opposition, Briggs has still failed to plead facts establishing the basic elements of a discrimination claim under Title VII. Initially, Plaintiff has not adequately pled membership in a protected class. Although, when liberally construed, Plaintiff's submissions assert that she was discriminated against on the basis of her race, color and national origin, nowhere does Briggs identify a specific protected class under any of these categories. *See* Pl.'s Opp. at 2 ("Plaintiff is a member of a protected class [.] . . ."); *id.* at 7 ("Plaintiff has suffered discrimination based on national origin."); *id.* at 8 ("I believe that I have been discharged in

16

retaliation for filing a charge of racial discrimination against my employer."); *id.* ("Plaintiff's proposed First Amended Complaint sets forth six counts: (1) Violation of Title VII based on color . . . (3) based on national origin . . . ."). More significantly, absent from Briggs's submissions are any allegations linking her suspension and termination to any membership in a protected class or otherwise protected characteristic or characteristics. As this Court observed in its previous Report and Recommendation in this matter, Plaintiff's failure to identify a protected class to which she belongs, much less allege that she was terminated because she was a member of that class, is fatal to her discrimination claim. *See* DE [33] at 12; *Jaeger v. N. Babylon Union Free Sch. Dist.*, 191 F. Supp. 3d 215, 230 (E.D.N.Y. 2016) ("[T]he *sine qua non* of a . . . discriminatory action claim under Title VII is that the discrimination must be because of the employee's protected characteristic." (citation and internal quotation marks omitted)); *Samuel v. Bellevue Hospital Center*, 366 F. App'x 206, 207 (2d Cir. Feb.17, 2010) (summary order) (affirming dismissal of employment discrimination claim due to the plaintiff's failure to "allege sufficient facts to render plausible his conclusory assertion that the defendants discriminated against him on the basis of his membership in a protected class"); *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001) ("It is axiomatic that mistreatment at work . . . is actionable under Title VII only when it occurs because of an employee's . . . protected characteristic.").

Moreover, again lacking from Briggs's submissions are allegations that Defendants acted with discriminatory animus when they suspended and terminated

Briggs.  A Title VII plaintiff, "must allege that the employer took adverse action against her at least in part for a discriminatory reason, and she may do so by alleging facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015).  As the Second Circuit has explained,

> [a]n inference of discrimination can arise from circumstances including, but not limited to, the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge.

*Littlejohn v. City of New York*, 795 F.3d 297, 312 (2d Cir. 2015).  Here, Plaintiff contends that "[t]he propose amended complain involve addition information for retaliation and prejudice in violation of wrongful separation set forth in May/2015 charge of discriminate . . . [,]" Am. Compl., yet she fails to describe any specific circumstances giving rise to an inference of discrimination.  Rather, Plaintiff merely declares repeatedly, and without factual support, that Defendants discriminated against her, *see, e.g.*, Pl.'s Opp. at 7 ("Plaintiff has suffered discrimination based on national origin."); *id.* at 8 ("I believe that I have been discharged in retaliation for filing a charge of racial discrimination against my employer."), and identifies conduct on the part of Defendants that amounts to, at worst, criticism of Plaintiff's job performance.  For example, Briggs alleges that Ryan, Fishstein and Pacheco notified her about various deficiencies with her "paper work" and that Hannibal was involved in an investigation concerning claims about a child "being in a car with another client." *Id.* at 8-9.  Ryan's purported "derogatory comments as to you people and how

18

to handle a client, places to take clients, and what to do at each visit . . . [,]" Pl.'s Opp. at 12, are of no moment, and cannot be construed as discriminatory in nature, absent further explanation along with an allegation that Briggs is a member of a protected class. Construing Plaintiff's submissions broadly and interpreting them to raise the strongest arguments that they suggest, the Court concludes that no plausible inference of discrimination can be drawn from these allegations alone. Accordingly, the Court respectfully recommends that Plaintiff's claim for discrimination under Title VII be dismissed.[15]

## B. <u>Title VII Retaliation Claims</u>

Briggs has likewise failed to state a viable claim for retaliation. A retaliation claim under Title VII follows the same *McDonnell Douglas* burden-shifting framework. *See Eustache v. Home Depot U.S.A., Inc.*, No. 13-cv-42L, 2014 WL 4374588, at *31 (E.D.N.Y. Sept. 2, 2014), *aff'd,* 621 F. App'x 86 (2d Cir. 2015). To establish a *prima facie* claim for retaliation, a plaintiff must show that: "(1) she was engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered a materially adverse action*;* and (4) there was a causal connection between the protected activity and that adverse action." *Harper v. Brooklyn Children's Ctr.*, No. 12-cv-4545, 2014 WL 1154056, at *3 (E.D.N.Y. Mar. 20, 2014)

---

[15] Although the Notice of Charge indicates that Plaintiff's charge with the EEOC alleged retaliation only, the Court declines to recommend dismissal of the discrimination claim on the alternative basis that Briggs failed to exhaust administrative remedies. As explained below, the Court recommends that Plaintiff be granted leave to replead, and it is conceivable that conduct underlying Plaintiff's retaliation claim could be "reasonably related" to that upon which her discrimination claim is founded. *See Agosta v. Suffolk Cty.*, 981 F. Supp. 2d 167, 172 (E.D.N.Y. 2013) ("A district court only has jurisdiction to hear claims . . . that are either contained in the EEOC charge or that are 'reasonably related' to the claims in the EEOC charge." (quoting *Brown v. Coach Stores, Inc.*, 163 F.3d 706, 712 (2d Cir. 1998)).

(quotation marks and emphasis omitted).  A plaintiff must also demonstrate that "a reasonable employee would have found the challenged action materially adverse, which in th[e retaliation] context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."  *Id.* at *3 (quoting *Burlington Northern & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 68, 126 S. Ct. 2405, 2415 (2006)).  Protected activity under Title VII's anti-retaliation provision "includes both opposing discrimination proscribed by the statute and . . . participating in Title VII proceedings." *Jaeger*, 191 F. Supp. at 231 (citation and quotation marks omitted).

Here, the Court is unable to ascertain from any of Plaintiff's submissions whether she engaged in protected activity prior to any adverse action, if so, whether there was a causal connection between the supposed protected activity and Briggs's suspension or termination.  Though the Complaint references an EEOC charge pertaining to Defendants' discriminatory conduct filed by Plaintiff on or in "10/15," *see* Compl. at 6, and the Amended Complaint identifies a "May/2015 charge of discriminate," *see* Am. Compl., the Notice of Charge is dated February 18, 2016—several months after Briggs's termination.  In light of Plaintiff's failure to adequately allege that she filed an EEOC charge prior to her suspension or termination, she is unable to rely on the general notion that she filed such a charge as the predicate for her retaliation claim.  Briggs also contends that she "is a member of the protected class, [who] communicat[ed] with a supervisor or manager about employment discrimination, including harassment."  Pl.'s Opp. at 2.  But again, those types of communications alone without any elaboration or detail are insufficient to be

considered as opposing discrimination or participating in Title VII proceedings in the context of a claim for retaliation. *See Bobrowsky v. New York City Bd. of Educ.*, No. 97-cv-874, 1999 WL 737919, at *6 (E.D.N.Y. Sept. 16, 1999) (finding that internal grievances upon which the plaintiff's claims were based could not constitute protected activities), *aff'd*, 213 F.3d 625 (2d Cir. 2000). Additionally, Plaintiff has still failed to allege facts establishing a causal connection between any protected activity and her suspension or termination. *See Livingston v. ADECCO*, No. 03-cv-4871, 2005 WL 2305007, at *15-16 (E.D.N.Y. Sept. 21, 2005) (dismissing retaliation claim where plaintiff "elicited no evidence in support of her claim that [defendant] had knowledge of her purported protected activity, and because knowledge cannot be shown by inferences alone" (internal quotation marks omitted)). Plaintiff's "belie[f] that [she] ha[s] been discharged in retaliation for filing a charge of racial discrimination against [her] employer[,]" Pl.'s Opp. at 8, lacks the detail required to show causation in this context. Simply put, the Court cannot infer, even after considering the entirety of Plaintiff's factual allegations to date, that the adverse employment action was taken because of protected activity in which she engaged, and many of her allegations still belie any assertion to that effect. Accordingly, the Court recommends that Briggs's retaliation claim also be dismissed.[16]

---

[16] Plaintiff's Opposition suggests, for the first time, that Briggs also intends to assert: (i) a claim for hostile work environment under Title VII; and (ii) a claim for retaliation under 42 U.S.C. § 1981. *See* Pl.'s Opp. at 8, 10. To state a hostile work environment claim, a "plaintiff must plead facts that would tend to show that the complained of conduct: (1) is objectively severe or pervasive—that is, creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's [protected class]." *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007) (quotation marks and alterations omitted); *see also Thomas v. New York City Dep't of Educ.*, 938 F. Supp. 2d 334, 357 (E.D.N.Y. 2013). As noted above, Briggs has not adequately alleged her

C. **State Law Claims**

Having once again determined that Plaintiff's federal claims should be dismissed, the Court likewise recommends declining to exercise supplemental jurisdiction over Briggs's NYSHRL claims. *See Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("[A] district court may decline to exercise supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction." (internal quotation marks omitted)); *see also Quiroz v. U.S. Bank Nat'l Ass'n*, No. 10-cv-2485, 2011 WL 2471733, at *8 (E.D.N.Y. May 16, 2011) (recommending that the district court decline to exercise supplemental jurisdiction), *report and recommendation adopted*, 2011 WL 3471497 (E.D.N.Y. Aug. 5, 2011).  Accordingly, the Court respectfully recommends that Plaintiff's claims under the NYSHRL also be dismissed.[17]

D. **Leave to Replead**

Given that Plaintiff is proceeding in a *pro se* capacity, and because it is not readily apparent at this juncture that further amendment would be futile, the Court

---

membership in a protected class.  Nor has Plaintiff alleged facts demonstrating that an objective person would find the environment in which she worked hostile or abusive.  Accordingly, insofar as Plaintiff asserts a claim for hostile work environment under Title VII, the Court recommends that it be dismissed.  Further, because claims for both discrimination and retaliation under § 1981 are subject to the same analysis as those alleged under Title VII, *see Amaya v. Ballyshear LLC*, 295 F. Supp. 3d 204, 226 (E.D.N.Y. 2018), this Court recommends that any such claims be dismissed for the reasons outlined above.  Although Plaintiff's Opposition also references the ADEA and the ADA, *see* Pl.'s Opp. at 7, the Court does not consider claims under those statutes as having been asserted given Briggs's failure to identify any conduct on the part of Defendants pertaining to either her age or a disability.

[17] Even if the Court were to exercise supplemental jurisdiction over Briggs's state law claims, dismissal of such claims on the merits would nonetheless be warranted for the reasons outlined above in connection with her Title VII claims.  *See Soloviev v. Goldstein*, 104 F. Supp. 3d 232, 246 (E.D.N.Y. 2015) ("Because NYSHRL claims are subject to the same standard as Title VII claims, the Court will consider them together . . . ." (citation, quotation marks and brackets omitted)).

recommends that Briggs be granted one final opportunity to replead her claims.  *See Thomas v. City of New York*, No. 16-cv-2924, 2016 WL 4203488, at *3 (E.D.N.Y. Aug. 9, 2016) (permitting *pro se* plaintiff to file a second amended complaint); *Davidson v. NYC Dep't of Soc. Servs.*, No. 08-cv-5261, 2009 WL 10706837, at *5 (E.D.N.Y. June 17, 2009) (same).[18]

## IV.    CONCLUSION

For the reasons set forth above, the Court respectfully recommends that Defendants' motion be granted and that the Amended Complaint be dismissed. Nevertheless, the Court recommends that Plaintiff be given one final opportunity to file an amended pleading that remedies the deficiencies detailed above.

## V.    OBJECTIONS

A copy of this Report and Recommendation is being served on Defendants by electronic filing on the date below.  Defendants are directed to promptly serve a copy of this Report and Recommendation on Plaintiff and file proof of service.  Any objections to this Report and Recommendation must be filed with the Clerk of the Court within 14 days of receipt of this report.  Failure to file objections within the specified time waives the right to appeal the District Court's order.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72; *Ferrer v. Woliver*, No. 05-3696, 2008 WL

---

[18] Although, as this Court has previously noted, no liability can arise against an individual defendant under Title VII unless such individual is the plaintiff's actual employer, *see Patterson v. Cty. of Oneida, N.Y.*, 375 F.3d 206, 226 (2d Cir. 2004), the Court again recommends that the dismissal of Plaintiff's claims against the Individual Defendants be without prejudice due to the possibility that Briggs files an amended pleading that states a cognizable federal claim and the Court opts to exercise supplemental jurisdiction over Plaintiff's state law claims.  Moreover, Plaintiff's second amended pleading could, in theory, allege individual liability under § 1981.  *See Amaya*, 295 F. Supp. 3d at 225.

4951035, at *2 (2d Cir. Nov. 20, 2008); *Beverly v. Walker*, 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).


Dated:      Central Islip, New York
            February 13, 2019

                              s/ Steven I. Locke
                              STEVEN I. LOCKE
                              United States Magistrate Judge