UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
RENEE M. BRIGGS,

                             Plaintiff,                  **REPORT    AND**
                                                    **RECOMMENDATION**

     -against-                                 16-cv-3882 (GRB)(SIL)

SCO FAMILY OF SERVICES, MEGAN RYAN,
BONNIE ISAAC, ALLISON PACHECO, JESSICA
FISHSTEIN, and LORI HANNIBAL,

                           Defendants.
------------------------------------------------------------------x

**STEVEN I. LOCKE, United States Magistrate Judge:**

      By way of Complaint dated July 6, 2016, *pro se* Plaintiff Renee M. Briggs

("Plaintiff" or "Briggs") commenced this employment discrimination and retaliation

action against Defendants Megan Ryan ("Ryan"), Bonnie Issac ("Issac"), Allison

Pacheco ("Pacheco"), Jessica Fishstein ("Fishstein"), Lori Hannibal ("Hannibal")

(collectively, the "Individual Defendants") and SCO Family of Services ("SCO") (SCO

together with the Individual Defendants, "Defendants").[1] *See* Complaint ("Compl."),

Docket Entry ("DE") [1].   Adopting a Report and Recommendation issued by this

Court on February 15, 2018, then-District Judge Bianco entered an Order dated

March 16, 2018, dismissing Plaintiff's Complaint without prejudice and with leave to

amend.  *See* DEs [33], [39].  Briggs then filed an Amended Complaint on April 16,

2018.  *See* Amended Complaint ("Am. Compl."), DE [41].  Adopting a second Report

---

[1] According to Defendants, Ryan and Pacheco now go by the names of Megan Seymore and Allison Houlroyd, respectively.  *See* Reply Memorandum of Law in Further Support of Defendants' Motion to Dismiss Plaintiff's Amended Complaint in its Entirety ("Def.'s Reply Mem."), DE [72], at 1.

and Recommendation issued by this Court on February 13, 2019, Judge Bianco entered an Order dated March 18, 2019, dismissing Plaintiff's Amended Complaint without prejudice and with leave to amend.  *See* DEs [54], [57].  Briggs then filed a Second Amended Complaint on July 8, 2019.  *See* Second Amended Complaint ("Second Am. Compl."), DE [63].

Presently before the Court, on referral from the Honorable Gary R. Brown[2] for Report and Recommendation, is Defendants' motion to dismiss the Second Amended Complaint for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.").  *See* Def.'s Reply Mem.  For the reasons set forth herein, the Court respectfully recommends that Defendants' motion be granted, and that Plaintiff's Second Amended Complaint be dismissed without prejudice.  The Court further recommends that Briggs be given the opportunity to file an amended pleading that remedies the deficiencies detailed below.

## I.    BACKGROUND

### A.  <u>Materials Considered by the Court</u>

Because Plaintiff's Second Amended Complaint fails to remedy the pleading deficiencies as detailed in the prior two Reports and Recommendations—and in light of the liberal pleading standard applicable to *pro se* civil rights complaints in this Circuit, *see Thompson v. Carter*, 284 F.3d 411, 419 (2d Cir. 2002)—the Court draws the following facts from Plaintiff's "Memorandum of Law in Opposition To

---

[2] This matter was transferred from Judge Bianco to Judge LeShann DeArcy Hall on May 31, 2019, and from Judge DeArcy Hall to Judge Gary R. Brown on March 3, 2020.

Defendant's [*sic*] Motion to Amended of Dismissed" ("Plaintiff's Opposition" or "Pl.'s Opp."), DE [72-2], in addition to the Second Amended Complaint.[3]  *See Washington v. Westchester Cty. Dep't of Correction*, No. 13-cv-5322, 2015 WL 408941, at *1, n.1 (S.D.N.Y. Jan. 30, 2015) ("While the Court ordinarily may not consider factual allegations contained in opposition papers to a motion to dismiss, given Plaintiff's *pro se* status, the Court will consider new factual allegations contained in Plaintiff's opposition.").

Moreover, the Court considers the factual allegations set forth in the original Complaint and its attachments, as well as the Amended Complaint and its attachments, to the extent such allegations are not repeated in the Second Amended Complaint or Plaintiff's Opposition.  *See id.* ("[G]iven Plaintiff's *pro se* status, . . . the Court will consider facts from the Plaintiff's Complaint . . . that have not been repeated in the Amended Complaint." (citations omitted)); *see also Fleming v. City of New York*, No. 10-cv-3345, 2014 WL 6769618, at *3 (S.D.N.Y. Nov. 26, 2014) ("Since *pro se* civil rights complaints should be read with . . . generosity, [Plaintiff's original] complaint must be given the benefit of incorporation." (alterations in original) (quoting *Camarano v. City of New York*, 624 F. Supp. 1144, 1147-48 (S.D.N.Y.1986))). The Court also considers the Notice of Charge of Discrimination (the "Notice of Charge") submitted by Plaintiff to the United States Equal Employment Opportunity Commission ("EEOC") on February 18, 2016.  *See* DE [49-1] (attached to Defendants' Reply in Support of Defendants' Motion to Dismiss Plaintiff's Amended Complaint

---

[3] Like those allegations in the Complaint, the Amended Complaint, and the Second Amended Complaint, the facts set forth in Plaintiff's Opposition are exceedingly difficult to decipher.

for Failure to State a Claim).  Although Defendants, and not Briggs, filed this document with the Court, Plaintiff's Opposition repeatedly references her submissions to the EEOC.  *See, e.g.*, Pl.'s Opp. at 15, 21-22.  Because the Court is construing Briggs's Opposition as an extension of her Second Amended Complaint, materials referenced therein are properly considered at this juncture.  *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (noting that, for purposes of Fed. R. Civ. P. 12(b), "the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference" (citation omitted)).

### B. <u>Facts</u>

Throughout the Second Amended Complaint, Plaintiff individually names, but does not provide the title, role, or responsibilities of the following individuals:  (1) Megan Ryan; (2) Bonnie Issac; (3) Jessica Fishstein; or (4) "Ms. Gloria."  Briggs also fails to describe her, or anybody else's, job responsibilities.  Further, neither in her Second Amended Complaint nor her Memorandum of Law in Opposition to Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint does Plaintiff identify her direct supervisor or reporting chain.

Briggs was employed by SCO, a family services provider, as a Waiver Service Provider from approximately August 2011 through her termination in or around December 2015.  *See* Pl.'s Opp. at 12.[4]  Plaintiff remained employed for approximately

---

[4] This Court will, as it did in the Report and Recommendation dated February 15, 2018, and the Report and Recommendation dated February 13, 2019, cite to the page numbers of the original Complaint and the attachments thereto supplied by the CM/ECF system on document DE [1].

three years "without incident" and worked with various supervisors, directors, and managers.  *See* Second Am. Compl. at 11.

Pacheco became Plaintiff's manager in March 2014, and Pacheco emailed Briggs on August 27, 2015, looking for "the service location" information that was missing from Briggs's service-provider paperwork.  *See* Compl. at 14.  On August 31, 2015, Fishstein advised Briggs that her HCI paperwork was "out of compliance" and that Plaintiff needed to renew her paperwork in order to continue to provide and bill for her services.[5]  *See* Pl.'s Opp. at 13.  Although Briggs appears to have provided Pacheco and Fishstein with the requested paperwork in mid-September, both Pacheco and Fishstein requested updated and complete paperwork from Briggs later that month. *See* Compl. at 20, 24-27; Pl. Opp. at 20 (referring to September 2, 2015 email).  On September 11, 2015, Pacheco reached out to Plaintiff by email regarding errors in her billing and service-provider paperwork that prevented Pacheco from collecting money for the services provided.  *See* Compl. at 24.  In that email, Pacheco informed Plaintiff that she did not include certain necessary billing information.  *Id.* Briggs alleges that, at some point during September 2015, "when arriving at client's home[s,] [*sic*]…Ryan [a Health Care Integrator at SCO] degraded [Plaintiff] with black jokes."  Pl.'s Opp. at 12.  On September 14, 2015, Briggs informed Issac about

_____

[5] Unless otherwise noted, the acronyms used by Plaintiff, and recited herein, are not defined in any of her submissions.

Ryan, "who created a hostile work environment, also stating black people are lazy, due to [Plaintiff's] cases [being] filed one day late."[6]  *Id.* at 13.

On or around September 21, 2015, Plaintiff was "requested to" either "set down" or "step down."  Compl. at 10.  According to Briggs, Ryan, would "speak to [Plaintiff] like a child," "sit down and look at information," and then "tell [Briggs] how to do her job."[7]  *Id.*  Plaintiff further alleges that Ryan both called to ask parents what time Briggs arrived for appointments and sent emails to parents regarding Plaintiff's whereabouts with their children (SCO clients).  *Id.* at 10-11.

Plaintiff was at the SCO office on either September 23, 2015 or September 24, 2015, but "[Fishstein] and [Pacheco weren't] there."  Compl. at 11.  While Briggs was at the office, she "put [something in Pacheco's] mailbox and left [something for Fishstein] on her desk."[8]  *Id.* at 11-12.  On September 28, 2015, Pacheco emailed Plaintiff again to advise her of additional deficiencies in her paperwork and requested that Briggs provide corrections.  *See id.* at 25.

On or around September 29, 2015, Briggs visited the SCO office to "set an appt on Sat."  *Id.* at 10.  When Plaintiff arrived, "Ms. Gloria" was on the phone with Ryan.  *Id.*  During that discussion, Ryan told Ms. Gloria that Briggs was suspended as of October 3, 2015.  *Id.*  Thereafter, Pacheco called Plaintiff back and explained that

---

[6] Ryan's specific statement is not quoted in the Complaint, Amended Complaint, Second Amended Complaint, or any of Briggs's prior oppositions to Defendants' Motions to Dismiss the Complaint or Amended Complaint.

[7] Briggs does not explain whether Ryan, as Health Care Integrator, supervised Briggs in any capacity or otherwise had decision-making authority as to her (Briggs).

[8] It is unclear what items Plaintiff left for Fishstein and Pacheco.

"she was suspended for billing."[9]  *Id*.  Pacheco "couldn't tell [Briggs] why she was suspended except for billing."  *Id*. at 12.  Fishstein said Plaintiff was suspended "due to Kevin H."  *Id*.  Hannibal, then-SCO's Regional Manager, *see* Second Am. Compl. at 13, informed Briggs that "she was suspended due to infraction of policy when there was suspension of taking [two] kids out."  Compl. at 10 (errors in original).  *Id*.  Hannibal also told Plaintiff that "once we get an allegation, we need to explore it."  *Id*. at 11.  More specifically, Hannibal apparently explained to Briggs that SCO "need[ed] to investigate the allegation of the child making a statement true or false being in the car with another client."  DE [48], 9.  Briggs "inquired with [Hannibal] as to what time and what day was the allege[d] charge."  *Id*.  Plaintiff asked for "everything in writing [and] even asked [Issac] [and] no one told her why."  Compl. at 12.  Plaintiff then "stated to . . . Hannibal where due process of the charges is."  *Id*.

According to Briggs, "Ms. Haerr contacted her to inform her about [Hannibal,] [and] Christine came to her house."[10]  *Id*. at 10.  Ms. Haerr then contacted Plaintiff a second time "after Christine came to her house again."  *Id*.  Plaintiff "never received remediation before from manager or QI."  *Id*.  "When [Briggs] obtained remediation from QI, she felt the agency was digging for information on her."  *Id*. at 11.

Pacheco again emailed Briggs on October 5, 2015 to express concerns about Briggs's billing practices and missing paperwork submissions.  *See id*. at 30.  Pacheco

---

[9] Notwithstanding this allegation, Plaintiff also claims that "[Pacheco] never told her (call email or txt) her to tell her she suspended."  Compl. at 12 (errors in original).

[10] Plaintiff does not provide further information regarding "Christine" or "Ms. Haerr." Based on the emails attached to Plaintiff's Complaint and Second Amended Complaint, "Ms. Haerr" appears to be related to one of Plaintiff's clients – "Kevin H[aerr]." *See* Second Am. Compl. at 16-17.

notified Plaintiff that her (Briggs's) documentation of July-September 2015 services provided was missing – in violation of Medicaid and SCO compliance – and that Briggs could not be paid without the documentation.  *See* Pl.'s Opp. at 12.  It appears that, on the same date, Pacheco informed Plaintiff, either by a separate email or by telephone, that she was "suspended" until further notice.  *See* Compl. at 10.

Plaintiff responded to Pacheco's email regarding billing and paperwork and provided details about certain services she rendered from July through August 2015. *Id.* at 31.  In addition, Briggs stated to Pacheco that "there is no way two months go by without the manager contacting the Waiver Service Provider because Medicaid has a [five] day turn around."  DE [48], 9.

Also on October 5, 2015, Briggs "complained to [Isaac] about [Ryan]."  Compl. at 11.  Isaac emailed Plaintiff on October 8, 2015 as a follow-up to Pacheco's October 5, 2015 email and further described the deficiencies in the billing records submitted by Briggs.  *See id.* at 33.  In response to that email, Plaintiff wrote, "I greatly appreciate your assistance however i stil need in rwritting the suspension dated from September because this information just came about in October and I need to speak to humans resources about the ntimadation and retalitation against me . . . ."  *Id.* (errors in original).

Plaintiff also alleges the following:

As to the claim of paper work Candice Sessom, M. Ed QI Specialist, the information was very well organized and contained abundant amount of data from previous HCI Tamika Foster (Manager, HCI).  [Ryan] and [Pacheco] client was different from . . . Fishstein and all proceeded to exercise complaint and false charges relating to paper work.  Bonnie Isaac Director of SCO . . . informed the defendants in question and . . .

> Hannibal we will get back to the plaintiff upon investigation. Bonnie
> Isaac LCSW Director E-mail Plaintiff about paper work from [Pacheco],
> [Fishstein] and [Ryan] October 15, 2015 of work not billed.

DE [48], 14 (errors in original). By letter dated December 9, 2015, SCO's Associate Human Resources Director, Mariel King, informed Briggs that her employment was terminated effective November 18, 2015. *See* Compl. at 28. Plaintiff "spoke to Human Resources [p]rior to being terminate [*sic*] in November 2015 for reason not stated without merit." DE [48], 14. Yet, "SCO proceeded to harassed and discriminated [*sic*] other clients, visiting unannounced looking for information about Plaintiff." *Id.* Further, "SCO… stopped services for client not going along with the interrogation." *Id.*

C. **EEOC Charges**

According to the original Complaint, Briggs filed a charge with the EEOC regarding Defendants' alleged discriminatory conduct on or in "10/15." *See* Compl. at 6. The Amended Complaint also identifies a "May/2015 charge of discriminate and Human rights law, under the title VIII [*sic*]." Am. Compl. However, the Notice of Charge provided to this Court by Defendants, EEOC Charge No. 520-2016-01354, indicates that Plaintiff filed a charge against SCO on February 18, 2016. *See* Notice of Charge, DE [49-1]. The Notice of Charge states that Briggs's charge was filed under Title VII of the Civil Rights Act and describes the "circumstances of alleged discrimination" as "retaliation" only. *Id.* Further, in a category entitled "issues," the Notice of Charge lists "suspension" and "terms/conditions." *Id.*

On May 11, 2016, the EEOC issued a Dismissal and Notice of Rights (the "Notice of Right to Sue") in relation to Charge No. 520-2016-01354. *See* Compl. at 6, 8. The Notice of Right to Sue explained that, "[b]ased upon its investigation, the EEOC [was] unable to conclude that the information obtained established violations of the statutes." *Id.* The Notice of Right to Sue also provided that the EEOC did not "certify that the respondent [was] in compliance with the statutes," nor did it make a finding "as to any other issues that might be construed as having been raised by" Plaintiff's charge." *Id.*[11]

### D. Procedural History

As set forth above, Plaintiff commenced this action against Defendants by way of Complaint dated July 6, 2016, which appeared to assert only claims for employment discrimination under the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. L. § 296. *See* Compl. at 3-4. Defendants filed their Answer to the Complaint on April 5, 2017. *See* DE [12]. On July 14, 2017, Defendants moved both to dismiss the Complaint for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) and for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). *See* DEs [26]-[28]. Following Judge Bianco's referral of that motion, *see* DE [32], this Court issued a Report and Recommendation dated February 12, 2018, recommending dismissal, without prejudice, of the Complaint under Fed. R. Civ. P. 12(c) for failure to state a claim. *See* DE [33]. Though this Court construed the Complaint as having asserted a claim under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C.

---

[11] To this point, Plaintiff has provided no further information regarding the charges allegedly filed with the EEOC in "May/2015," or "10/15." Compl. at 6; Am. Compl.

§ 2000e *et seq.*, and thus recommended that Defendants' argument under Fed. R. Civ. P. 12(b)(1) be rejected, the Court nevertheless concluded that Briggs failed to plead facts supporting a claim for either discrimination or retaliation under Title VII. *See* DE [33], 8-15. Additionally, this Court recommended that Judge Bianco decline to exercise supplemental jurisdiction over Plaintiff's state law claims. *See id.* at 15-16. On March 16, 2018, Judge Bianco adopted the February 12, 2018 Report and Recommendation in its entirety, thereby dismissing Briggs's Complaint without prejudice and with leave to amend. *See* DE [39].

Briggs filed a one-page Amended Complaint on April 16, 2018. *See* DE [41]. In her amended pleading, Plaintiff alleged that "[t]he propose amended complain involve addition information for retaliation and prejudice in violation of wrongful separation set forth in May/2015 charge of discriminate and Human rights law, under the title VIII[,]" *id.* (errors in original), but Briggs set forth no facts in support of her claims. Consequently, in accordance with a briefing schedule set by Judge Bianco, Defendants again moved to dismiss Plaintiff's claims on May 24, 2018. *See* DEs [43], [44]. Briggs opposed Defendants' motion on June 27, 2018. *See* DEs [47], [48]. After analyzing Plaintiff's Amended Complaint, this Court issued a second Report and Recommendation dated February 13, 2019, recommending dismissal, without prejudice, of the Complaint under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. *See* DE [54]. On March 18, 2019, Judge Bianco adopted the February 13, 2019 Report and Recommendation in its entirety, thereby dismissing Briggs's Complaint without prejudice and with leave to amend. *See* DE [57].

11

Plaintiff filed a fourteen-page Second Amended Complaint on July 8, 2019, *see* DE [63]. In accordance with a briefing schedule set by Judge Bianco, Defendants moved again to dismiss Plaintiff's claims, under Fed. R. Civ. P. 12(b)(6), on January 31, 2020. *See* DE [72-1]. Briggs opposed Defendants' motion on February 28, 2020. *See* DE [72-2]. In the Second Amended Complaint, Plaintiff alleges that she has been discriminated against in employment pursuant to Title VII, based on "race" and color." *See* Second Am. Compl. at 1, 3. Unlike her prior allegations, Briggs *does not* claim to have been discriminated against pursuant to either: (1) the Age Discrimination in Employment Act of 1967 ("ADEA"); or (2) the Americans with Disabilities Act of 1990 ("ADA"). *See id.* at 1. In the text of the Second Amended Complaint, Plaintiff also invokes 42 U.S.C. § 1981, and the due process and equal protection clauses of the United States Constitution. Second Am. Compl. at 12-14.

In short, Briggs contends that she is a member of "a protected class," and experienced "adverse employment action" when she was fired by SCO. Pl.'s Opp. at 24. According to Briggs, Defendants' "offending conduct" consists of "termination of employment, unequal terms and conditions of [Plaintiff's] employment, [and] retaliation." Second Am. Compl. at 3. Briggs also suggests that, as a result of their interactions with her during her employment with SCO, the Individual Defendants are liable under the aiding and abetting provisions of NYSHRL Section 296(6). Pl.'s Opp. at 10.

12

## II.    LEGAL STANDARDS

### A.  Fed. R. Civ. P. 12(b)(6)

To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1940 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1960 (2007)).  A claim is considered plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949.  But, a pleading "that offers only 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1965).  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557, 127 S. Ct. at 1966).

In deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a court must 'accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor.'" *U.S. ex rel. Siegel v. Roche Diagnostics Corp.*, 988 F. Supp. 2d 341, 343 (E.D.N.Y. 2013) (quoting *LaFaro v. N.Y. Cardiothoracic Grp.*, 570 F.3d 471, 475 (2d Cir. 2009)).  Nevertheless, "threadbare recitals of the elements of a cause of action" that are supported by "conclusory" statements and mere speculation are inadequate and subject to dismissal. *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (internal quotation and citation omitted); *see Iqbal*, 556 U.S. at 678, 129 S. Ct.

at 1949 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").  "The court's consideration on a motion under Fed. R. Civ. P. 12(b)(6) is limited to the factual allegations in the complaint; documents incorporated by reference into the complaint; matters of which judicial notice may be taken; and documents either in plaintiff's possession or of which plaintiff had knowledge and relied on in bringing suit."  *Messina v. Mazzeo*, 854 F. Supp. 116, 128 (E.D.N.Y. 1994) (citing *Brass v. American Film Technologies, Inc.*, 987 F.2d 142, 150 (2d Cir. 1993)); *see also Burton v. Am. Fed'n of Gov't Employees (AFGE) 1988*, No. 11-cv-1416, 2012 WL 3580399, at *5 (E.D.N.Y. Aug. 17, 2012).

## B. *Pro Se* Pleadings

It is well-established that pleadings by *pro se* plaintiffs are held "to less stringent standards than formal pleadings drafted by lawyers."  *Hughes v. Rowe*, 449 U.S. 5, 9, 101 S. Ct. 173, 176 (1980); *see also Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197, 2200 (2007) ("A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.") (internal citations omitted).  The Second Circuit has held that a court reviewing a *pro se* complaint must "construe the complaint broadly, and interpret it to raise the strongest arguments that it suggests."  *Weixel v. Bd. of Educ. of the City of New York*, 287 F.3d 138, 146 (2d Cir. 2002) (internal alterations omitted); *see also Rene v. Citibank N.A.*, 32 F. Supp. 2d 539, 541 (E.D.N.Y. 1999) (holding that a court must "make reasonable allowances so that . . . *pro se* plaintiffs do not forfeit their rights by virtue of their lack of legal training").

However, the court "need not argue a *pro se* litigant's case nor create a case for the *pro se* which does not exist." *Ogunmokun v. Am. Educ. Servs./PHEAA*, No. 12-cv-4403, 2014 WL 4724707, at *3 (E.D.N.Y. Sept. 23, 2014) (quoting *Molina v. New York*, 956 F. Supp. 257, 259 (E.D.N.Y. 1995)).

## III.   DISCUSSION

### A.   Title VII Discrimination Claims

Title VII "aims to remedy discrimination in the workplace on the basis of race, color, religion, sex or national origin . . . ." *Harrison v. Potter*, 323 F. Supp. 2d 593, 599 (S.D.N.Y. 2004). The statute provides, in relevant part:

> It shall be an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e-2(a). A claim under Title VII is analyzed under the burden-shifting framework of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S. Ct. 1817 (1973). *See Mohamed v. NYU*, No. 14-cv-8373, 2015 WL 3387218, at *23 (S.D.N.Y. May 21, 2015), *report and recommendation adopted,* 2015 WL 5307391 (S.D.N.Y. Sept. 10, 2015), *reconsideration denied sub nom.*, 2015 WL 7076124 (S.D.N.Y. Nov. 12, 2015). Under this framework, a plaintiff has the initial burden to establish a *prima facie* case of discrimination. *See id.*; *McDonnell Douglas,* 411 U.S. at 802, 93 S. Ct. at 1824. A plaintiff can establish a *prima facie* case by alleging that: "(1) [she] is a member of a protected class; (2) [she] was qualified for the position [s]he held; (3) [she] suffered an adverse employment action; and (4) the adverse action took place under

circumstances giving rise to [an] inference of discrimination." *See Mohamed*, 2015 WL 3387218, at *23. If all elements are met, the burden shifts to the employer to "proffer a legitimate non-discriminatory reason for its actions . . . ." *Abrams v. Dep't of Pub. Safety*, 764 F.3d 244, 251 (2d Cir. 2014). Then, the plaintiff must "establish that the defendant's reason is in fact pretext for unlawful discrimination." *Id.* "Although an employment discrimination plaintiff need not plead a *prima facie* case of discrimination, . . . dismissal is nevertheless appropriate where the plaintiff fail[s] to allege even the basic elements of a discriminatory action claim." *Idlisan v. N. Shore-Long Island Jewish Health Sys., Inc.*, No. 13-cv-2345, 2014 WL 2157540, at *7 (E.D.N.Y. May 23, 2014) (internal citations and quotation marks omitted).

Here, even considering the allegations set forth in the Complaint, the Amended Complaint, the Second Amended Complaint, and Plaintiff's Opposition, Briggs has still failed to plead facts establishing the basic elements of a discrimination claim under Title VII. Initially, Plaintiff has adequately pled membership in a protected class, *see* Second Am. Compl. at 12 ("[Plaintiff is] a black female…"); Pl.'s Opp. at 12 ("Plaintiff is an African American female."), and pled facts establishing that she suffered an adverse employment action, *see* Second Am. Compl. at 12 ("Plaintiff was suspended without pay on or about OCT/2015"); *id.* at 13 ("Plaintiff received negative job reference[s] to prospective employers."); Compl. at 28 (December 9, 2015 letter from Mariel King, SCO's Associate HR Director, to Briggs, "confirm[ing Briggs's] separation from SCO Family of Services effective November 18th, 2015.").

16

Notwithstanding these allegations, Briggs fails to link her suspension and termination to her membership in a protected class. As this Court observed in its previous Reports and Recommendations in this matter, Plaintiff's failure to adequately allege that she was terminated because she was a member of a protected class is fatal to her discrimination claim. *See* DE [33] at 12; DE [54] at 17; *Jaeger v. N. Babylon Union Free Sch. Dist.*, 191 F. Supp. 3d 215, 230 (E.D.N.Y. 2016) ("[T]he *sine qua non* of a . . . discriminatory action claim under Title VII is that the discrimination must be because of the employee's protected characteristic." (citation and internal quotation marks omitted)); *Samuel v. Bellevue Hospital Center*, 366 F. App'x 206, 207 (2d Cir. Feb. 17, 2010) (summary order) (affirming dismissal of employment discrimination claim due to the plaintiff's failure to "allege sufficient facts to render plausible his conclusory assertion that the defendants discriminated against him on the basis of his membership in a protected class"); *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001) ("It is axiomatic that mistreatment at work . . . is actionable under Title VII only when it occurs because of an employee's . . . protected characteristic.").

Put another way, Briggs's submissions lack allegations demonstrating that Defendants acted with discriminatory animus when they suspended and terminated her. A Title VII plaintiff, "must allege that the employer took adverse action against her at least in part for a discriminatory reason, and she may do so by alleging… [circumstances] giving rise to a plausible inference of discrimination." *Vega v.*

*Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015). As the Second Circuit has explained,

> [a]n inference of discrimination can arise from circumstances including, but not limited to, the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge.

*Littlejohn v. City of New York*, 795 F.3d 297, 312 (2d Cir. 2015). Here, although Plaintiff alleges that her assignments were somehow distributed unfairly or that she was unfairly or improperly accused of child neglect, she provides no facts from which the Court could reasonably infer that Defendants took any action against Plaintiff because of her race or color. Indeed, Plaintiff fails to connect any of her experiences, allegations, or claims to any racial animus on the part of the Defendants.

Although Briggs alleges that Ryan, "degraded" her with racial jokes, *see* Pl.'s Opp. at 12, there is no allegation suggesting that Ryan was a supervisor or had any decision-making ability as to Plaintiff's employment. Accordingly, this allegation fails to save her claim, whether by establishing the necessary causal connection, where none otherwise exists, or by demonstrating discriminatory animus. *See Vance v. Ball State University*, 570 U.S. 421, 464 (2013) (holding that an employee is considered a "supervisor" under Title VII if the employee is "empowered by the employer to take tangible employment actions against [other employees].");  *Ray v. Weit*, No. 13-cv-6416, 2016 WL 1229056, at *12 (E.D.N.Y. Mar. 28, 2016) (dismissing Plaintiff's Title VII discrimination claim in part because Plaintiff, "fail[ed] to plead…job titles, supervisors, or any other facts from which the Court could infer

18

[supervisory status].").  Construing Plaintiff's submissions broadly and interpreting them to raise the strongest arguments that they suggest, the Court concludes that no plausible inference of discrimination can be drawn from these allegations alone.

Moreover, dismissal is appropriate because Briggs did not allege discrimination in her EEOC charge.  Rather, Plaintiff's EEOC Charge alleges retaliation only. *See* Notice of Charge, DE [49-1].  Briggs's failure to allege discrimination in her original charge precludes this Court from considering her claim of discrimination at this juncture. *See Littlejohn*, 795 F.3d at 322 ("Before bringing a Title VII suit in federal court, an individual must first present the claims forming the basis of such a suit in a complaint to the EEOC or the equivalent state agency."); *Peterson v. Ins. Co. of N. Am.*, 884 F. Supp. 107, 109 (S.D.N.Y. 1995) ("Courts will not permit a claim that is based on a wholly different type of discrimination to be brought if it was not initially asserted in the EEOC charge.").  This standard is one that "applies to pro se and counseled plaintiffs alike." *See Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 384 (2d Cir. 2015).

That being said, federal courts may consider subsequent claims that are not alleged in an original EEOC charge if the subsequent claims are "reasonably related" to the conduct upon which the allegations in the original EEOC charge were based. *See Agosta v. Suffolk Cty.*, 981 F. Supp. 2d 167, 172 (E.D.N.Y. 2013) ("A district court only has jurisdiction to hear claims . . . that are either contained in the EEOC charge or that are 'reasonably related' to the claims in the EEOC charge.") (quoting *Brown v. Coach Stores, Inc.*, 163 F.3d 706, 712 (2d Cir. 1998)); *Stewart v. United States INS*,

762 F.2d 193, 198 (2d Cir. 1985) (noting that "district courts may assume jurisdiction over a claim 'reasonably related' to a charge filed with the EEOC, including incidents occurring after the filing of the EEOC claim").  Here, although this Court has given Plaintiff ample opportunity to replead, Briggs has not put forward any explanation supporting the contention that that conduct underlying Plaintiff's discrimination claim is "reasonably related" to her retaliation claim.  For both of these reasons, the Court respectfully recommends that Plaintiff's claim for discrimination under Title VII be dismissed.

## B. **Title VII Retaliation Claims**

Briggs has likewise failed to state a viable retaliation cause of action under Title VII.  A retaliation claim under Title VII follows the same *McDonnell Douglas* burden-shifting framework.  *See Eustache v. Home Depot U.S.A., Inc.*, No. 13-cv-42L, 2014 WL 4374588, at *31 (E.D.N.Y. Sept. 2, 2014), *aff'd,* 621 F. App'x 86 (2d Cir. 2015).  To establish a *prima facie* claim for retaliation, a plaintiff must plead that: "(1) she was engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered a materially adverse action*;* and (4) there was a causal connection between the protected activity and that adverse action."  *Harper v. Brooklyn Children's Ctr.*, No. 12-cv-4545, 2014 WL 1154056, at *3 (E.D.N.Y. Mar. 20, 2014) (quotation marks and emphasis omitted).  A plaintiff must also demonstrate that "a reasonable employee would have found the challenged action materially adverse, which in th[e retaliation] context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."  *Id.* at *3

(quoting *Burlington Northern & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 68, 126 S. Ct. 2405, 2415 (2006)). Protected activity under Title VII's anti-retaliation provision "includes both opposing discrimination proscribed by the statute and . . . participating in Title VII proceedings." *Jaeger*, 191 F. Supp. at 231 (citation and quotation marks omitted).

Here, based on a liberal construal of Plaintiff's submissions, Briggs engaged in protected activity when she lodged complaints against Defendants' alleged discriminatory conduct with the EEOC – although the details and number of EEOC charges filed is unclear. Plaintiff's original Complaint references an EEOC charge filed by Plaintiff on or in "10/15," *see* Compl. at 6, and the Amended Complaint identifies a "May/2015 charge of discriminate [*sic*]." *See* Am. Compl. Outside of these two references, Briggs has failed to provide documentation of the alleged May 2015 or October 2015 EEOC complaints with her pleadings or opposition papers. The only documented complaint made by Briggs to the EEOC with which this Court has been provided is the February 18, 2016 Notice of Charge—several months after Briggs's termination. *See* Notice of Charge, DE [49-1]. Notwithstanding the above, for purposes of evaluating Defendants' Motion to Dismiss, the Court is required to accept Plaintiff's undocumented allegations of earlier EEOC complaints as true. *See Roche Diagnostics Corp.*, 988 F. Supp. 2d at 343.

Nevertheless, Plaintiff's failure to properly plead facts establishing a causal connection between her protected activity and her suspension or termination is fatal to her claim. *See Livingston v. ADECCO*, No. 03-cv-4871, 2005 WL 2305007, at *15-

16 (E.D.N.Y. Sept. 21, 2005) (dismissing retaliation claim where plaintiff "elicited no evidence in support of her claim that [defendant] had knowledge of her purported protected activity, and because knowledge cannot be shown by inferences alone" (internal quotation marks omitted)).  Plaintiff does not plead any facts that could be construed to connect the undocumented February 2015 or May 2015 complaints to her suspension or termination.  The February 2016 complaint, which was filed approximately three months after Briggs's termination, cannot logically serve as the predicate for her retaliation claim.  In this context, the Court cannot infer, even after considering the entirety of Plaintiff's factual allegations to date, that the adverse employment action was taken because of any protected activity in which she engaged. Accordingly, the Court recommends that Briggs's retaliation claim also be dismissed.[12]

## C. **Section 1981 Retaliation Claim**

In addition to the claims addressed above, the Second Amended Complaint invokes 42 U.S.C. § 1981.  *See* Second Am. Compl. at 13; Pl.'s Opp. at 26-27.  Claims for both discrimination and retaliation under § 1981 are subject to the same analysis

---

[12] Plaintiff's Opposition suggests that Briggs also intends to assert a claim based on a hostile work environment under Title VII. *See* Pl.'s Opp. at 13. Plaintiff's hostile work environment allegation is based on a single statement by Ryan, *see* Pl.'s Opp. at 13, and, without more, this Court does not believe that a single comment, without more factual support, could give rise to a situation where an objective person would find the environment in which she worked hostile or abusive. Additionally, Plaintiff did not allege a hostile work environment in her original EEOC charge, *see* Notice of Charge, DE [49-1]. Accordingly, as set forth above, the Court cannot now consider the hostile work environment claim as it is not "reasonably related" Briggs's original retaliation claim. *See Mathirampuzha v. Potter*, 548 F.3d 70, 77 (2d Cir. 2008) ("Courts invoke the "reasonably related" doctrine of Title VII of the Civil Rights Act of 1964, 42 U.S.C.S. § 2000e et seq., when the factual allegations made in an administrative complaint can be fairly read to encompass the claims ultimately pleaded in a civil action or to have placed the employer on notice that such claims might be raised."). As a result, the Court recommends that Briggs's claim for a hostile work environment be dismissed.

as those alleged under Title VII. *See Amaya v. Ballyshear LLC*, 295 F. Supp. 3d 204, 226 (E.D.N.Y. 2018).

Briggs's § 1981 claim appears to be based entirely on a single speculative allegation that "SCO kept a personal file commenting on [Plaintiff's] complains [*sic*] which constituted racial statements or terms, use to describe Afro American women." Second Am. Compl. at 13.  Plaintiff's Opposition does not include any additional facts to support this claim.  *See* Pl.'s Opp. at 26-27.  Without additional facts or documents, this Court is unable to sustain any claim under § 1981.  Accordingly, the Court recommends that Plaintiff's claims under § 1981 be dismissed without prejudice due to the possibility that Briggs could, theoretically, file an amended pleading that states a cognizable cause of action under § 1981.

### D. <u>Section 1983 Claim</u>

In the Second Amended Complaint, Plaintiff alleges, for the first time, a violation of her rights under § 1983, and more specifically, that her due process and equal protection rights were violated, *see* Second Am. Compl. at 11-13; Pl.'s Opp. at 27-30, but does not allege that SCO is a municipality or that any of the Individual Defendants are state actors, as required under § 1983. *See Fabrikant v. French*, 691 F.3d 193, 206 (2d Cir. 2012) ("Because the United States Constitution regulates only the Government, not private parties, a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes state action.") (citing *Flagg v. Yonkers Sav. & Loan Ass'n*, 396 F.3d 178, 186 (2d Cir. 2005)) (internal quotation marks omitted); *Horvath v. Westport Library Ass'n*, 362

F.3d 147, 151 (2d Cir. 2004) ("The right to due process is established by the Fourteenth Amendment applies only to government entities, and an attempt to vindicate that right through a Section 1983 claim can be lodged only against a government entity."). Accordingly, this Court recommends that Briggs's claim under 42 U.S.C. § 1983 be dismissed.

### E. <u>State Law Claims</u>

Having once again determined that Plaintiff's federal claims should be dismissed, the Court likewise recommends declining to exercise supplemental jurisdiction over Briggs's NYSHRL claims. *See Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("[A] district court may decline to exercise supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction." (internal quotation marks omitted)); *see also Quiroz v. U.S. Bank Nat'l Ass'n*, No. 10-cv-2485, 2011 WL 2471733, at *8 (E.D.N.Y. May 16, 2011) (recommending that the district court decline to exercise supplemental jurisdiction), *report and recommendation adopted*, 2011 WL 3471497 (E.D.N.Y. Aug. 5, 2011). Indeed, "[i]n the interest of comity, the Second Circuit instructs that 'absent exceptional circumstances,' where federal claims can be disposed of pursuant to Rule 12(b)(6) or summary judgment grounds, courts should 'abstain from exercising pendent jurisdiction.'" *Birch v. Pioneer Credit Recovery, Inc.*, No. 06-cv-6497, 2007 WL 1703914, at *5 (W.D.N.Y. June 8, 2007), *aff'd sub nom. Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122 (2d Cir. 2008) (quoting *Walker v. Time Life Films, Inc.*, 784 F.2d 44, 53 (2d Cir. 1986), *cert. denied*, 476 U.S. 1159 (1986)). Accordingly, the

Court respectfully recommends that Plaintiff's claims under the NYSHRL also be dismissed.

### F. <u>Leave to Replead</u>

Given that Plaintiff is proceeding in a *pro se* capacity, and because it is not certain at this juncture that further amendment would be futile, the Court recommends that Briggs be granted an additional opportunity to replead her claims in a Third Amended Complaint. *See Durand v. Excelsior Care Grp. LLC*, No. 19-cv-2810, 2020 WL 231591, at \*24 (E.D.N.Y. Dec. 9, 2020) (permitting *pro se* plaintiff to file a third amended complaint); *Sanderson v. Leg Apparel LLC*, No. 19-cv-8423, 2020 WL 734742, at \*35-36 (S.D.N.Y. Dec. 14, 2020) (same).

## IV.    CONCLUSION

For the reasons set forth above, the Court respectfully recommends that Defendants' motion be granted and that the Second Amended Complaint be dismissed.    Nevertheless, the Court recommends that Plaintiff be given the opportunity to file an amended pleading that remedies the deficiencies detailed above.

## V.    OBJECTIONS

A copy of this Report and Recommendation is being served on Defendants by electronic filing on the date below.    Defendants are directed to promptly serve a copy of this Report and Recommendation on Plaintiff and file proof of service.    Any objections to this Report and Recommendation must be filed with the Clerk of the Court within 14 days of receipt of this report.    Failure to file objections within the

specified time waives the right to appeal the District Court's order. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72; *Ferrer v. Woliver*, No. 05-3696, 2008 WL 4951035, at *2 (2d Cir. Nov. 20, 2008); *Beverly v. Walker*, 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

Dated:    Central Islip, New York
          January 6, 2021

/s/ Steven I. Locke
STEVEN I. LOCKE
United States Magistrate Judge